IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 12-3236 |
| ESTATE OF TONI CHEE, SAM CHEE, HERITAGE BANK OF CENTRAL ILLINOIS, as special fiduciary of the ESTATE OF TONI J. CHEE, deceased, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This is an action pursuant to 28 U.S.C. § 2201, wherein Plaintiff Cincinnati Insurance Company seeks declaratory and other relief against Defendants Estate of Toni Chee, Sam Chee and Heritage Bank of Central Illinois, as special fiduciary of the Estate of Toni J. Chee, deceased. Pending before the Court are Cross Motions for Summary Judgment and two Motions to Supplement the Record filed by Defendant Sam Chee.

# I. INTRODUCTION

Plaintiff Cincinnati Insurance Company ("Cincinnati") seeks a declaration regarding insurance coverage sought by Defendants Sam Chee and the Estate of Toni Chee ("the Estate") under a personal umbrella liability policy issued by Cincinnati to Sam Chee, M.D., and Toni Chee in connection with an August 19, 2010 automobile accident ("the accident"), wherein Toni Chee, Sam's wife, suffered serious injuries that ultimately contributed to her death on August 25, 2010.  The vehicle, a 2007 Mercedes GL 450 sport wagon, was being driven by Sam Chee at the time of the accident.

On August 15, 2012, the Estate filed a Complaint against Sam Chee asserting counts for Survival and Wrongful Death entitled Heritage Bank of Central Illinois, as Special Administrator of the Estate of Toni Chee v. Sam Chee, Case No. 12-L-261 (Peoria County, Illinois) (the "Negligence Lawsuit").  Count I is a survival cause of action and seeks damages for pain and suffering, emotional distress and medical costs.  Count II is a wrongful death claim which seeks damages on behalf of her next of kin for loss of her

guidance, services, society, companionship, love and affection, and from their loss from grief, sorrow and mental suffering.

In Peoria County Case No. 12-L-262, the Special Fiduciary also brought an action against two physicians and their employers who treated Toni Chee following the accident.  In this Medical Malpractice Lawsuit, the Special Fiduciary alleged that the medical providers were guilty of negligence when they did not observe a cervical fracture in their interpretation of the CT scan on August 18, 2010.

Cincinnati has denied coverage to the Estate, Heritage Bank of Central Illinois and Sam Chee on the grounds that Cincinnati has no duty to defend or indemnify the Estate, Heritage Bank and/or Sam Chee in relation to the underlying automobile accident and any damages or costs arising from such injuries, including any settlement or award of damages that might arise from the Negligence Lawsuit.

Cincinnati's Amended Complaint in this case includes eight counts:

Count I is asserted against the Estate and Defendant Heritage Bank of Central Illinois, as special fiduciary of the Estate,  and it alleges no

coverage under the policy for bodily injury to an insured.

Count II is asserted against Sam Chee and allege no coverage under the policy for bodily injury to an insured.

Count III is asserted against the Estate and Heritage Bank and alleges no coverage because there is no legal obligation to pay damages.

Count IV is asserted against the Estate, Heritage Bank and Sam Chee and alleges lack of exhaustion of underlying coverage.

Count V is asserted against the Estate, Heritage Bank and Sam Chee and alleges lack of uninsured or underinsured motorist coverage.

Count VI is asserted against the Estate, Heritage Bank and Sam Chee and alleges professional liability exclusion.

Count VII is asserted against the Estate and Heritage Bank and alleges failure to comply with the notice conditions of the policy.

Count VIII is asserted against Sam Chee and alleges failure to comply with the notice conditions of the policy.

Defendant Sam Chee has filed a Counterclaim against Cincinnati, asserting that its refusal to provide a defense and recognize coverage in his

favor constitute a breach of contract and breach of fiduciary duties.  The Counterclaim requests a declaration that Cincinnati is obliged to provide a defense and obliged to recognize coverage under the policy in connection with the matters alleged in the Amended Complaint.  Additionally, if Cincinnati continues to refuse to perform these duties, Defendant Chee requests that Cincinnati be ordered to pay the policy limits of its policy in order to protect the assets of Chee, in addition to compensatory and punitive damages for failure to perform.

Defendant Sam Chee has filed a Motion for Summary Judgment.

Plaintiff Cincinnati has also filed a Motion for Summary Judgment.

## II. BACKGROUND

A. Procedural Background

On December 22, 2011, counsel for the Estate sent a letter to Coyle Insurance Agency requesting coverage for the injuries suffered by Toni Chee in an August 19, 2010 automobile accident under the personal umbrella policy issued by Cincinnati to Sam Chee, M.D., and Toni Chee.

According to the Crash Report, attached to the December 22, 2011

letter, the vehicle driven by Sam Chee was traveling in the 7700 block of North Koerner Road in Peoria, Illinois when it veered off the road and crashed into two trees.

On May 15, 2012, counsel for the Estate sent correspondence to Cincinnati demanding payment of the $5 million policy limits of the Umbrella Policy issued to Sam Chee, M.D. and Toni Chee, in relation to the accident. After seeking further explanation of the nature and basis for the Estate's claim, on September 14, 2012 Cincinnati sent correspondence to the Estate denying coverage for its claim arising out of the accident.

On August 15, 2012, Heritage Bank filed the Negligence Lawsuit, asserting two counts against Sam Chee. Count I alleges a survival cause of action and seeks damages for pain and suffering, emotional distress and medical costs. Count II asserts a cause of action based on wrongful death and seeks damages on behalf of the Estate of Toni Chee and Toni Chee's next of kin.

On October 11, 2012, counsel for Sam Chee sent correspondence to Cincinnati requesting coverage for Sam Chee under the personal liability

umbrella policy issued by Cincinnati to Sam Chee and Toni Chee.  On November 7, 2012, Cincinnati sent correspondence to counsel for Sam Chee denying coverage for the Negligence Lawsuit.

Sam Chee, the Estate of Toni Chee and/or Heritage Bank seek insurance coverage from Cincinnati in connection with the August 19, 2010 automobile accident and the Negligence Lawsuit.

Cincinnati filed its Complaint for Declaratory Judgment on September 5, 2012 and, following its subsequent receipt of the Negligence Complaint, its Amended Complaint for Declaratory Judgment on November 7, 2012.  Cincinnati contends that it owes no duty to defend or indemnify the Estate, Heritage Bank and/or Sam Chee in relation to the accident, the injuries suffered by Toni Chee and any damages or costs arising from such injuries, including her death, or the negligence lawsuit.

The Chees had automobile insurance coverage through State Farm which provided bodily injury coverage limits up to $250,000 per person and $500,000 per occurrence.

B. Cincinnati Policy

7

(1)

Cincinnati issued Personal Umbrella Liability Policy No. U01 0339728 with effective dates of June 1, 2010 to June 1, 2011 (the "Cincinnati Policy") to Sam Chee, M.D. and Toni Chee.  The Policy was in effect during the relevant time period and had limits of $5,000,000.

The Insuring Agreement of the Cincinnati Policy provides in pertinent part as follows:

A.   Insuring Agreement

1.   "We" will provide the insurance described in this policy. "You" agree to pay the premium and to comply with the provisions and conditions of this policy.

2.   "We" will pay on behalf of the "insured" the "ultimate net loss" which the "insured" is legally obligated to pay as damages for "bodily injury" . . .  arising out of an "occurrence" to which this insurance applies:

a.   Which is in excess of the "underlying insurance;" or

b.   Which is either excluded or not covered by "underlying insurance."

The Cincinnati Policy's Schedule of Underlying Insurance provides in pertinent part as follows:

SCHEDULE   A  –  SCHEDULE   OF   UNDERLYING INSURANCE

It is agreed by you and your relatives that the following minimum limits of underlying insurance are in force as of the inception date of this policy and will be maintained during the term of the policy:

| Underlying Insurance | | Underlying Limit | |
|---|---|---|---|
| A. Automobile Liability: | | Bodily Injury | $250,000 Each Person |
| | | | $500,000 Each Occurrence |
| | | Property Damage | $100,000 Each Occurrence |
| | and/or and | Bodily Injury Property Damage combined | Each Occurrence |
| B. Comprehensive Personal Liability | Bodily Injury | | |
| | | Property Damage | |
| | and | Personal Injury combined | $400,000 Each Occurrence |

The Cincinnati Policy contains the following language regarding defense and supplementary payment obligations:

1.     "We will have the right and duty to defend the "insured" against any "suit" seeking damages because of "bodily injury," "personal injury," or "property damage" to which this insurance applies.  "We will have no duty to defend the "insured" against any "suit" seeking damages for

9

"bodily injury," "personal injury," or "property damage" to which this insurance does not apply.  "We" may, at "our" discretion, investigate any "occurrence" and settle any claim or "suit" that may result when:

a.   The applicable limit of the "underlying insurance" and any other insurance have been exhausted by payment of claims;

b.   Damages are sought for "bodily injury," "personal injury," or "property damage" to which no "underlying insurance" or other insurance applies.

The Cincinnati Policy excludes insurance pursuant to the following "Bodily Injury or Personal Injury to an Insured" exclusion:

3.   Bodily Injury or Personal Injury to an Insured

This insurance does not apply to:

"Bodily injury" or "personal injury" to any "insured."

However, this exclusion does not apply:

a.   To the maintenance or use of your covered automobile by any person other than you or any "relative;" or

b.   When a third party acquired a right of contribution against you or any "relative."

The Cincinnati Policy excludes insurance pursuant to the following "Uninsured or Underinsured Motorist Coverage" exclusion:

21.   Uninsured or Underinsured Motorist Coverage

Any liability or obligation under any uninsured motorist, underinsured motorist, "automobile" no-fault or first party personal injury law.

The Cincinnati Policy states that the words "you" and "your" refer "to the person named in the Declarations as the Named Insured and his or her legally recognized spouse, provided his or her spouse's legal residence of domicile is the same as theirs."

The Cincinnati Policy defines the term "bodily injury" to mean "bodily harm, sickness, disease, disability, humiliation, shock, fright, mental anguish or mental injury sustained by a person, including care, loss of services or death arising out of any of these at any time."

In relevant part, the Cincinnati Policy defines the term "Insured" as follows:

11.   "Insured:"

a.   Means:

. . .

(2)   For "occurrences" caused by the use of "automobiles":

11

(a)   "You" are covered for any "occurrence" involving an "automobile" "you" own, lease, borrow, rent or use.  But if "you" borrow or use an "automobile," "you" are covered only if "you" drive or use it with permission of the owner.

. . .

(c)   "Your" "resident relatives" for any "occurrence," involving an "automobile" they own, lease, rent or use.

. . .

When the word an immediately precedes the word "insured," the words an "insured" together mean one or more "insureds."

The Cincinnati Policy defines the term "occurrence" as follows:

12.   "Occurrence" means:

a.   An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage;" or

b.   An offense that results in "personal injury."

The Cincinnati Policy defines the term "Resident Relative" as follows:

"Resident Relative" is defined, in pertinent part, as "[a] person

related to "you" by blood, marriage or adoption that is a resident of

"your"household and whose legal residence of domicile is the same as yours."

The Cincinnati Policy defines the term "underlying insurance" as follows:

21. "Underlying insurance" means the policies of insurance listed in Schedule A – Schedule of Underlying Insurance and the insurance available to the "insured" under all other insurance policies applicable to the occurrence. "Underlying Insurance" also includes any type of self-insurance or alternative method by which the "insured" arranges for funding of legal liabilities which would also be insured under this policy.

The Cincinnati Policy contains the following conditions regarding timely notification of "occurrences" and claims which, in relevant part, provides as follows:

SECTION III – CONDITIONS

Duties in the Event of Occurrence, Claim or Suit

In case of an "occurrence," claim or "suit" "you" and any other involved "insured" will perform the following duties.  "We" have no duty to provide coverage under this policy if "your" or any other "insured's" failure to comply with the following duties is prejudicial to "us."  "You" and any other involved "insured" shall cooperate with "us" in seeing that these duties are performed:

13

    a.    "You" and any other involved "insured" must see to it that "we" are notified as soon as practicable of an "occurrence" which may result in a claim or "suit."

The "Bodily Injury or Personal Injury to an Insured" exclusion provides that there is no coverage under the Policy for "bodily injury" to any insured.  However, this exclusion does not apply "[w]hen a third party acquires a right of contribution against you or any 'relative.'"

(2)

Toni Chee and Sam Chee, M.D. are listed as named insureds on the Policy.  The Crash Report revealed that Toni Chee and Sam Chee lived at the same residence at the time of the accident.  Toni Chee and Sam Chee are "resident relatives" as such term is defined and used in the Policy.

The vehicle in question was being operated by Sam Chee at the time of the accident and no claims for contribution have been asserted by any third parties in the Negligence Lawsuit.  Cincinnati alleges, therefore, that the exceptions to the "Bodily Injury or Personal Injury to an Insured" exclusion do not apply.  The Defendants dispute this allegation to the extent it suggests that a claim for contribution must be asserted in a

14

lawsuit. They assert that applicable law and Cincinnati's umbrella policy at issue merely require that a third-party acquire a claim for contribution against an insured or their relative, not that any such claim be asserted. Additionally, the Defendants state that claims for contribution have been filed against Sam Chee.

Cincinnati alleges the "Bodily injury or Personal Injury to an Insured" exclusion bars coverage to the Estate of Toni Chee and to Heritage Bank for any claims made by such parties for damages related to injuries suffered by Toni Chee because Toni Chee is an insured for purposes of the determination of coverage under the Policy. The Defendants dispute this allegation to the extent that the bodily injury exclusion does not apply when a third party acquires a right of contribution against you or any relative.

According to the terms of the insuring agreement and the definition of "ultimate net loss," the umbrella liability coverage afforded by the Policy applies only to legal liabilities of an insured.

Cincinnati alleges the claim tendered to it by the Estate and/or

Heritage Bank, as fiduciary of the Estate, arises from and relates to injuries suffered by Toni Chee herself and does not arise from damages relating to claims or demands made by any party against Toni Chee or the Estate. However, the Defendants assert that coverage is not conditioned on whether claims are made against Toni Chee or the Estate.

Cincinnati further alleges that, in the absence of any actual or potential legal obligation of an insured to pay for "ultimate net loss" arising from damages covered by the Policy, there is no coverage owed under the Policy.

According to the communications received by Cincinnati, the Estate of Toni Chee, Heritage Bank and/or Sam Chee seek coverage under the Cincinnati Policy in connection with claims, including the Negligence Lawsuit, concerning injuries suffered by Toni Chee as a result of the alleged negligent operation of an automobile by Sam Chee.  The Defendants note there are also claims for injuries suffered by Toni Chee's next of kin.

To the extent that the claims made by the Estate, Heritage Bank, and/or Sam Chee relate to the presence or lack of automobile insurance, the

lack of adequate automobile insurance (i.e. uninsured or underinsured automobile insurance coverage), or on the basis of some form of first-party injury theory, the Cincinnati Policy's "Uninsured or Underinsured Motorist Coverage" operates to bar coverage to any and all insureds.

Cincinnati alleges it has no coverage obligation under the Policy in relation to any liability or obligations of an insured that arise under any uninsured motorist, underinsured motorist, "automobile" no-fault or first party personal injury law.

The Policy requires that Cincinnati must be notified as soon as practicable of any "occurrence" that may result in a "claim" or "suit." Cincinnati has no duty to provide coverage if an insured's failure to comply with these duties is prejudicial.

The accident occurred on August 19, 2010. Toni Chee died on August 25, 2010. The first notice to Cincinnati of the accident and Toni Chee's death occurred in December of 2011 when it received a December 22, 2011 letter from the Estate.

The two Negligence Lawsuits were filed in Peoria County on August

15, 2012, and were consolidated on May 1, 2013.  On October 11, 2012, counsel for Sam Chee sent correspondence notifying Cincinnati of the Negligence Lawsuit filed against him and informing Cincinnati of Sam's contention that the coverage under the umbrella policy would provide Sam with a defense in the Negligence Lawsuit.

In a letter dated November 7, 2012, Cincinnati denied Sam Chee coverage in the Negligence Lawsuit and further provided that Cincinnati will not indemnify Sam for any damages awarded in the Negligence Lawsuit.  Cincinnati enclosed with the letter a copy of its Amended Complaint for Declaratory Judgment action which was filed in this case.

Cincinnati and Sam Chee have filed Cross Motions for Summary Judgment.  The Estate and Heritage Bank have adopted the arguments contained in Sam's Motion and Response.  For the most part, the motions and related documents address the same arguments regarding coverage.

## III. DISCUSSION

Cincinnati contends there are a number of reasons that insurance coverage does not exist under the policy for the claims asserted against Sam

Chee in relation to the accident and the Negligence Lawsuit.  First, coverage is barred pursuant to the "Bodily Injury or Personal Injury to an Insured" exclusion.  Next, there is no coverage due to late notice of claim and occurrence.  Cincinnati also asserts there is no coverage for uninsured or underinsured motorist claims or for claims under first party personal injury law.

For some of the same reasons, Cincinnati also alleges there is no coverage for The Estate of Toni Chee and/or Heritage Bank.  Cincinnati alleges another reason there is no coverage is because there is no legal obligation to pay damages.

Sam Chee contends summary judgment should be entered in his favor for a number of reasons.  Summary Judgment should be granted on Count II because the exclusion relating to "Bodily Injury or Personal Injury to an Insured" does not apply.  Chee claims it does not apply and Cincinnati has a duty to provide coverage to Sam because third parties have acquired rights of contribution against him and have filed the same in state court.  Moreover, the exclusion does not apply and Cincinnati has a duty to

provide coverage to Sam to the extent that some of the claimants are not resident relatives and to the extent that some of the claims are not for "Bodily Injury" or "Personal Injury" as defined by the Policy. Additionally, summary judgment should be entered on Count IV because the underlying State Farm automobile liability policy limits will be exhausted, as demonstrated by State Farm's offer to settle for the liability policy limit of $250,000.00 per person.

Additionally, Sam Chee asserts Count VIII should be dismissed because he complied with the notice provisions of the policy.

Sam Chee concedes two of the counts. Chee concedes Counts V and VI as they relate to him.

### A. Legal standard

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The Court construes all inferences in favor of the non-movant. See Siliven v. Indiana Dept. of Child Services, 635 F.3d 921, 925 (7th Cir. 2011). If--as

in this case--the Court is considering cross-motions for summary judgment, it must "construe all facts and inferences in favor of the party against whom the motion under consideration is made." Orr v. Assurant Employee Benefits, 786 F.3d 596, 600 (7th Cir. 2015). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." See Harper v. C.R. England, Inc., 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. See Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. See id.

The Court must "look to the allegations in the underlying complaint and compare these allegations to the relevant coverage provisions of the insurance policy." Crum and Forster Managers Corp. v. Resolution Trust Corp., 156 Ill.2d 384, 393 (Ill. 1993). "The allegations of the underlying complaint must be construed liberally, and any doubt as to coverage must

be resolved in favor of the insured." <u>Illinois State Medical Ins. Services, Inc. v. Cichon</u>, 258 Ill. App.3d 803, 808 (3d Dist. 1994) (citations omitted). "The insurer's duty to defend is much broader than its duty to indemnify its insured." <u>Crum and Forster Managers Corp.</u>, 156 Ill.2d at 393-94.

An insurer's duty to defend is triggered if the complaint alleges facts within or potentially within policy coverage, even if the allegations are determined to be "groundless, false or fraudulent." See U.S. Fid. & Guar. Co. v. Wilkin Insulation Co., 144 Ill.2d 64, 73 (Ill. 1991). "Moreover, if the underlying complaints allege several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." Id. "What is important is not the legal label that the plaintiff attaches to the defendant's (that is, the insured's) conduct, but whether that conduct as alleged in the complaint is at least arguably within one or more of the categories of wrongdoing that the policy covers." Cincinnati Insurance Co. v. Eastern Atlantic Insurance Co., 260 F.3d 742, 745 (7th Cir. 2001).

B. Notice of Claim and Occurrence

Count VII of the Amended Complaint is asserted against the Estate and Heritage Bank.  Count VIII is asserted against Sam Chee.  In both counts, Cincinnati alleges it has no duty or obligation to defend due to late notice.

The Policy provides that "Cincinnati is to be notified as soon as practicable of an 'occurrence' which may result in a claim or 'suit.'" Moreover, Cincinnati has no duty to provide coverage if the failure to timely notify is "prejudicial" to Cincinnati.

The language "as soon as practicable" has been interpreted to require notice within a reasonable time based on all of the facts and circumstances. See State Sec. Ins. v. Burgos, 145 Ill.2d 423, 431 (1991).  In considering the timeliness of notification, courts examine several factors:

> (1) the specific language of the policy's notice provision; (2) the degree of the insured's sophistication in the world of commerce and insurance; (3) the insured's awareness that a 'lawsuit' as defined under the terms of the policy has taken place; and (4) once this awareness arises, the insured's diligence and reasonable care in ascertaining whether policy coverage is available.

23

Northbrook Property & Casualty Ins. Co. v. Applied Systems, Inc., 313 Ill. App.3d 457, 466 (2000).  "[T]he presence or absence of prejudice to the insurer is one factor to consider when determining whether a policyholder has fulfilled any policy condition requiring reasonable notice."  Country Mutual Ins. Co. v. Livorsi Marine, Inc., 222 Ill.2d 303, 317 (2006). However, if the insurer did not receive reasonable notice of an occurrence or lawsuit, the policyholder may not recover pursuant to the policy, regardless of whether the insurer was prejudiced by the notice.  See id.

As Sam Chee alleges, however, none of the cases cited by Cincinnati involved an insurance policy that conditioned a carrier's policy obligations on a showing of prejudice due to untimely notice.  In this case, a specific provision of the insurance contract requires a showing of prejudice and the Court must give effect to all of the policy language.  See Applied Systems, 313 Ill. App.3d at 464.  Cincinnati has not identified any prejudice. Moreover, the insurer has a broad duty to defend and any doubt must be resolved in favor of the insured.  See Crum and Forster Managers Corp., 156 Ill.2d at 393-94; Cichon, 258 Ill. App. at 808.  Therefore, even if Sam

Chee was required to notify Cincinnati as soon as practicable after the accident- -instead of when he reasonably believed the damages could implicate Cincinnati's umbrella policy- -the Court concludes that Sam Chee has satisfied the notice requirement due to lack of any prejudice. Accordingly, coverage is not barred due to late notice.

Cincinnati is not entitled to summary judgment on Counts VII or VIII. The Estate and Heritage Bank are entitled to summary judgment on Count VII. Sam Chee is entitled to summary judgment on Count VIII.

C. "Bodily Injury or Personal Injury to an Insured" Exclusion

(1)

In Count I, Cincinnati asserts a claim against the Estate and Heritage Bank pursuant to the "Bodily Injury or Personal Injury to an Insured" exclusion. Cincinnati seeks a declaration that it has no duty or obligation to provide insurance proceeds under the Policy to either entity.

Count II is asserted against Sam Chee and is based on the "Bodily Injury or Personal Injury to an Insured" exclusion. Cincinnati seeks a declaration that it has no obligation to defend or indemnify Chee with

25

respect to the Accident or Negligence Lawsuit.

Sam Chee seeks insurance coverage for his potential liability arising from the August 19, 2010 automobile accident and the lawsuit filed by The Estate of Toni Chee in relation to the bodily injury and eventual death of Toni Chee.  Cincinnati contends that coverage is barred pursuant to the "Bodily Injury or Personal Injury to An Insured" exclusion.  Toni Chee is a Named Insured on the Policy and is also considered a "resident relative" and is thus an insured on that basis.  The exclusion provides:

> This insurance does not apply to:
>
> > "Bodily injury" or "personal injury" to any "insured."
> >
> > However, this exclusion does not apply:
> >
> > a.   To the maintenance or use of your covered automobile by any person other than you or any "relative;" or
> >
> > b.   When a third party acquires a right of contribution against you or any "relative."

There is no dispute that Toni Chee is classified as an "insured." However, Sam Chee contends that the exclusion does not apply pursuant to (b) because third parties have acquired rights of contribution against

Sam and have filed same in state court.

"Except as otherwise provided in [the Joint Tortfeasor Contribution Act], where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them."  740 ILCS 100/2.  Although the "right of contribution exists from the time of injury, it exists in inchoate form, and does not ripen, mature, vest, or accrue, until either payment is made, obligated, incurred, or an action is brought against the defendant." Highland v. Bracken, 202 Ill. App.3d 625, 629 (4th Dist. 1990).

Sam Chee asserts State Farm originally offered to settle all claims for the uninsured policy limit of $250,000.  However, once the Estate and the Special Fiduciary sued Dr. Dixon, the Central Illinois Radiological Associates, Ltd. ("CIRA"), Dr. Baggett and OSF Healthcare System d/b/a St. Francis Medical Center ("OSF"), State Farm withdrew the uninsured policy limit and offered the liability policy limit of $250,000.  Presumably, State Farm understood that Dr. Dixon, CIRA, Dr. Baggett and OSF

acquired their respective claims for contribution against Sam, at the very latest, once they were sued for some or all of Toni Chee's injuries, if not before, even if the claims existed in inchoate form.

"In the case of a claim for contribution, if there is a pending action, then a party seeking contribution must file that claim as either a counterclaim or third-party complaint in that pending action."  Cianci v. Safeco Ins. Co. of Illinois, 356 Ill. App.3d 767, 776 (1st Dist. 2005).  In the medical malpractice action in state court, Drs. Dixon and Baggett, in addition to the CIRA and OSF, have filed contribution claims against Sam Chee pursuant to the Illinois Joint Tortfeasor Contribution Act.

Because of the contribution claims which have been asserted against him, Sam Chee claims that summary judgment should be granted in his favor on Count II because the Exclusion does not apply and Cincinnati, therefore, has a duty to defend and indemnify Sam Chee.

Cincinnati contends that Sam Chee's argument as to the underlying lawsuit and contribution claim is misleading because there are two separate lawsuits that have been filed arising out of Toni Chee's injuries.  Only one

of the lawsuits, the Negligence Lawsuit, is at issue in Cincinnati's declaratory judgment action. Cincinnati contends that the "Bodily Injury or Personal Injury to an Insured" exclusion is applicable to the Negligence Lawsuit.

The Negligence Lawsuit concerns a complaint filed against Sam Chee by the Estate of Toni Chee and Heritage Bank. The lawsuit alleges that Sam Chee's negligent driving caused Toni Chee's injuries. Each of the two causes of action is based solely and exclusively on injuries suffered by Toni Chee. No other claims or claimants are involved in the Negligence Lawsuit.

Cincinnati notes there is a second lawsuit which relates to certain medical malpractice claims asserted against several of Toni Chee's medical treaters following the accident. Although the statute refers to a third party who "acquires" a right of contribution, see 215 ILCS 5/143.01(a), Cincinnati addresses whether contribution claims have been "asserted" against Sam. However, the Court concludes that the right to contribution, if any, would have been acquired at the time of the alleged medical malpractice. It is something of a moot point because the defendants in the

second lawsuit have asserted contribution claims.

Cincinnati notes that, in response to Sam Chee's notice of contribution claims filed against him in the Medical Malpractice Lawsuit, Cincinnati reserved its rights under the Umbrella Policy.  Accordingly, as the umbrella insurer, Cincinnati alleges that matters relating to that particular lawsuit are not at issue or ripe for adjudication or declaration in this declaratory judgment action.  Cincinnati acknowledges that the "Bodily Injury or Personal Injury to an Insured" exclusion is potentially applicable with respect to the contribution claims filed against Sam Chee in the Medical Malpractice Lawsuit.

Cincinnati further asserts that although the two lawsuits have been consolidated, this has been done for "purposes of discovery" only for convenience and economy.  However, it claims this does not mean the two lawsuits are merged into a single suit.  Moreover, the consolidation does not "merge the causes into a single suit, or change the rights of the parties, or make those who were parties in one suit parties in another."  Nationwide Mut. Ins. Co. v. Filos, 285 Ill. App.3d 528, 532 (1st Dist. 1996) (citation

omitted).

Cincinnati contends that because Sam Chee's liability, if any, with respect to the Negligence Lawsuit can only arise from injuries to Toni Chee, including her subsequent death, there is no feasible contribution claim against him in that action. Cincinnati has reserved its rights as to any contribution claims in the Medical Malpractice Lawsuit.

However, "Illinois courts adhere, as a matter of public policy, to a general rule against the splitting of claims or causes of action." See Best Coin-Op, Inc. v. Paul F. Ilg Supply Co., Inc., 189 Ill. App.3d 638, 657 (1st Dist. 1989). Because of the strong interest against piecemeal litigation, a claim arising from a single tort cannot be divided and be the subject of multiple actions. See id. If the claim is indivisible, a plaintiff must bring or assert all grounds of recovery in one suit. See id.

To the extent that Cincinnati is alleging that this declaratory judgment action only addresses its policy obligations to Sam Chee in the context of the Negligence Lawsuit against him, the Court finds that Cincinnati has not shown it is entitled to an exception under the general

rule against claim splitting.  Cincinnati is effectively asking the Court for a declaratory judgment on its policy obligations as to both lawsuits because they arise out of a common nucleus of operative facts and are indivisible, pursuant to the Illinois Joint Tortfeasor Contribution Act.  Pursuant to the Illinois Insurance Code, Cincinnati cannot deny coverage because of the contribution claims.

(2)

In his Motion for Summary Judgment, Sam Chee further alleges that the exclusion does not apply and Cincinnati has a duty to provide coverage to Sam to the extent that some claims are not for "Bodily Injury" or "Personal Injury" as defined by the Policy.  Cincinnati contends that the Negligence Lawsuit appears to include wrongful death claims asserted by Toni Chee's children and, for this reason, the "Bodily Injury or Personal Injury to an Insured" exclusion is not applicable.  Sam Chee alleges the survival action is for bodily injury sustained by Toni Chee while she was still living, while the wrongful death action is brought by the Estate for bodily injury to the children.

32

Regardless of the nature of the claims, because the Court has determined that third parties have acquired rights of contribution, the issue of how these claims is defined is irrelevant.

For all of these reasons, the Court concludes that the exclusion relating to "Bodily Injury or Personal Injury to an Insured" does not apply. Accordingly, Cincinnati has a duty to provide coverage to Sam Chee because third parties have acquired rights of contribution against Sam which have now been filed in state court.

Cincinnati is not entitled to summary judgment on Counts I and II. The Estate and Heritage Bank are entitled to summary judgment on Count I. Summary judgment is warranted in favor of Sam Chee on Count II.

### D. Exhaustion of Underlying Coverage

Count IV is asserted against the Estate, Heritage Bank and Sam Chee. In Count IV, Cincinnati asserts it has no coverage obligation under the Policy until it is shown that the underlying State Farm coverage either excludes or does not cover the damages associated with the Accident, or the applicable underlying coverage has been exhausted. Sam Chee asserts

summary judgment should be granted on Count IV because the underlying

State Farm Automobile Policy limits will be exhausted.  He notes State

Farm previously offered to settle for the liability limit of $250,000 per

person.  Accordingly, the policy limits have been exhausted under any fair

reading.

Cincinnati alleges no evidence establishes that the State Farm Policy

does not apply to the claims and/or that its limits of liability have been

exhausted.  Consequently, it contends that Chee's argument that the policy

"will be" exhausted or that there has been a "provisional acceptance" of

State Farm's offer to pay its policy limits is not persuasive.  Cincinnati

asserts the State Farm policy's limits must be exhausted for the Cincinnati

Policy to even be potentially implicated.  Additionally, Cincinnati states

that the settlement offer made by State Farm was not made in relation to

the Negligence Lawsuit.  It was made in connection with the Medical

Malpractice Lawsuit after State Farm's further evaluation of the claims

asserted against Sam Chee.

Cincinnati is correct that under Section I.C.1. of the Policy, it is

afforded with discretion to "investigate any occurrence and settle any claim

or "suit" that may result when":

    a.    The applicable limit of the "underlying insurance" and any other insurance have been exhausted by payment of claims; or

    b.    Damages are sought for "bodily injury," "property damage" or "personal injury" to which no "underlying insurance" or other insurance applies.

The above policy language does not address Cincinnati's coverage

obligations.  Cincinnati's discretionary authority with respect to its ability

to settle claims or suits is separate from Cincinnati's non-discretionary

coverage obligations it owes to its insured.

    The policy defines "Ultimate net loss" as follows:

    [T]he sum actually paid or payable in the settlement or satisfaction of the "insured's" legal obligation for damages, to which this insurance applies, either by adjudication or compromise.  "Ultimate net loss" does not include Defense and Supplementary Payments as described in Section 1C. of this policy.

Section I.A.2. addresses coverage, as follows:

    "We" will pay on behalf of the "insured" the "ultimate net loss" which the "insured" is legally obligated to pay as damages for "bodily injury," "property damage" or "personal injury" arising

35

out of an "occurrence" to which this insurance applies:

a.      Which is in excess of the "underlying insurance;" or

b.      Which is either excluded or not covered by underlying insurance.

The policy language in I.A.2. does not speak to "exhaustion" or "payment" of claims.  Therefore, Cincinnati's discretionary authority as to settlement of any claim or "suit" after the underlying insurance is exhausted by payment is not at issue.  The provision refers to coverage for "ultimate net loss" in excess of the underlying insurance.

If- -as in this case- -the policy provision's terms do not require an insured to secure the full limits of a primary policy before the excess policy is invoked, then the insured need not obtain full payment of claims under the primary policy before invoking coverage under a secondary policy.  See Schweighart v. Country Mut. Ins. Co., 122 Ill. App.3d 40, 41-42 (4th Dist. 1984).

As Sam Chee asserts, if exhaustion of a primary carrier's policy required actual payment of a claim, then there would be no need for secondary insurance because any settlement with the primary carrier would

36

require a general release of claims, thus eliminating a need for secondary insurance.

Accordingly, the Court concludes that the provisional acceptance of State Farm's offer to pay the liability policy limits is a clear demonstration that the primary carrier's liability policy limits of $250,000 have been exhausted, even though the amount has not been formally paid.

Cincinnati is not entitled to summary judgment on Count IV. Summary judgment is warranted in favor of Sam Chee, the Estate and Heritage Bank on Count IV.

<u>E. Additional Counts</u>

In Count V, Cincinnati asserts it has no coverage obligation under the Policy in relation to any liability or obligations of an uninsured motorist, underinsured motorist, "automobile" no-fault or first party personal injury law.  Because Sam Chee concedes Count V, the Court concludes that the "Uninsured or Underinsured Motorist" Exclusion is applicable with respect to the Negligence Lawsuit.  Cincinnati is entitled to summary judgment on Count V.

In Count VI, Cincinnati asserts it has no coverage obligation under the Policy in relation to liability and/or obligations arising from any professional liability claim or allegations.  Sam Chee concedes Count VI as it relates to him.  However, Sam Chee alleges Cincinnati has a duty to defend Chee's former medical group, CIRA, and its individual members as joint tortfeasors.  Therefore, Chee asserts the "Professional Liability" exclusion is applicable with respect to the underlying Negligence Lawsuit and Cincinnati has no coverage obligation relating to Sam Chee.  However, the Court need not resolve the issue of how Count VI might apply to non-party individuals or entities.  Cincinnati is entitled to summary judgment on Count VI.

Sam Chee is the only one of the three Defendants who filed a substantive response to Cincinnati's Motion.  As noted earlier, the Estate of Toni Chee and Heritage Bank adopted Sam Chee's Response.  Certain portions of Cincinnati's Motion are directed at all of the Defendants.  In such instances, Sam Chee's Response generally addresses (or concedes) the arguments as to each Defendant.  However, some portions of the motion

pertain only to the Estate and/or Heritage Bank.  If those arguments were not opposed, then Cincinnati is entitled to summary judgment on those claims.  In Count III, Cincinnati asserted claims against the Estate and Heritage Bank that it has no legal obligation to pay damages to those Defendants with respect to the Accident.   Accordingly, Cincinnati is entitled to summary judgment on Count III.

Ergo, the Motion of Plaintiff Cincinnati Insurance Company for Summary Judgment  [d/e 22] is ALLOWED in PART and DENIED in PART.

The Motion of Defendant Sam Chee for Summary Judgment [d/e 21] is ALLOWED in PART and DENIED in PART.

Summary Judgment shall be entered in favor of the Plaintiff on Counts III, V and VI.

Summary Judgment shall be entered in favor of the Defendants and against the Plaintiff on Counts I, II, IV, VII and VIII.

The Defendant's First Motion to Supplement the Record [d/e 30] and Second Motion to Supplement the Record [d/e 32] are both DENIED.

The formal entry of Judgment will be withheld.  The Parties have previously advised that the disposition of the Parties' Cross-Motions for Summary Judgment may conclude the matter in controversy in the district court.  Therefore, the Parties shall within seven (7) days of the entry of this Opinion and Order advise the Court whether additional proceedings are necessary in light of the Court's ruling.

ENTER: August 20, 2015

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge

40